**NOT FOR PUBLICATION** **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAENZ, | : |
| | : |
| | : Civil Case No. 06-4807 (FSH) |
| Plaintiff, | : |
| | : **OPINION and ORDER** |
| v. | : |
| | : Date: December 12, 2007 |
| | : |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| | : |
| Defendant. | : |
| | : |

### HOCHBERG, District Judge

This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submission of the parties pursuant to Federal Rule of Civil Procedure 78. The issue before the Court is whether the Commissioner has met its burden at Step 5 of the sequential analysis in showing that Plaintiff, despite her nonexertional impairment, is capable of performing other work. To resolve this issue, the Court must consider whether the ALJ properly relied on Social Security Ruling ("SSR") 85-15 in finding that there are other jobs in the national economy that Plaintiff can perform. The Court concludes that the ALJ's reliance on SSR 85-15 at Step 5 of the sequential analysis was improper because Plaintiff suffers from both exertional and nonexertional impairments.

I.  Background

Plaintiff alleges that she became disabled on November 16, 2001 due to a hernia, and that she also suffers from neck and spine pain. (Tr. 20.)  On September 22, 2003, Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI"). (Id.)  Plaintiff's initial claim was denied, as was her request for reconsideration. (Id.)  Plaintiff's request for a hearing was granted and heard before an administrative law judge ("ALJ") on November 17, 2005.  On December 14, 2005, the ALJ denied Plaintiff's claim.  On August 2, 2006, the Appeals Council concluded that there were no grounds for review. (Tr. 5-7.)

Plaintiff is a 44 year-old woman with a first grade education whose past work experience includes being a floor worker in a clothing factory. (Compl. ¶ 4.)  Plaintiff's job regularly required her to lift and carry more than 10 pounds of clothes.  Occasionally, Plaintiff was required to carry 20-40 pounds. (Tr. 34.)  In addition, Plaintiff's job required her to be on her feet the majority of the day, either standing or walking. (Id.)

Plaintiff was involved in a car accident on November 16, 2001, in which she sustained injuries to her head, neck, right shoulder, and her upper middle and lower back. (Tr. 21.)  Plaintiff was treated at New Jersey Medical Center, where x-rays were taken and no fractures or dislocations were reported. (Id.)  Plaintiff was released with instructions to follow up with her private physician. (Tr. 21-22.)  Plaintiff consulted multiple physicians and underwent numerous procedures for neck and spine pain, including MRIs, massages, and epidural facet nerve block injections. (Tr. 22-31.)[1]  After the accident, Plaintiff stopped working. (Tr. 34.)

---

[1] Plaintiff does not challenge the ALJ's assessment of her exertional impairments.

On May 2, 2004, Plaintiff was referred by the Disability Determination Services (DDS) to Dr. Joseph Buceta for a mental status examination. (Tr. 28.) According to Dr. Buceta, Plaintiff reported that she had a depressed mood, a poor sleep pattern, and a fair appetite. (Id.) She felt worthless and hopeless, though she denied suicidal or homicidal ideation. (Id.) Plaintiff reported that during a typical day she would prepare breakfast and dinner for her family, lightly clean the house, pick up her younger child from school and go to her doctor appointments. (Id.) Plaintiff also reported that she had never been admitted to a psychiatric ward or been under the care of a psychiatrist. (Id.) Dr. Buceta reported that Plaintiff was cooperative and that her speech was coherent and goal-directed in Spanish. (Tr. 28-29.) Plaintiff was oriented to time, place, and person. (Tr. 29.) Her long-term memory was fair. (Id.) As for her short-term memory, Plaintiff could not remember any of the three items presented to her after five minutes of distraction. (Id.) She could perform simple arithmetic operations correctly. (Id.) Finally, Plaintiff's social judgment was adequate for all the observed circumstances that were reviewed during the exam. (Id.) Dr. Buceta diagnosed Plaintiff with major depression without psychotic features.[2] (Id.)

II. Standard of Review for Disability Benefits.

This Court reviews the determination of the Commissioner to assess whether there is a substantial evidence supporting the decision. 42 U.S.C. § 405(g); Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence

---

[2] The ALJ disagreed with Dr. Buceta's ultimate conclusion regarding the severity of Plaintiff's depression. Although the ALJ noted that he found Dr. Buceta's findings "most accurate with regard to [Plaintiff's] mental functionality" (Tr. 37.), he ultimately concluded that Plaintiff's depression "has resulted in no more than a mild difficulty . . . ." (Tr. 36-37.)

as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record. See Simmonds v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

III. Standard for Finding of Disability

An individual may be entitled to Social Security benefits upon a finding of disability by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An individual will be deemed to be disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

<u>Step One: Substantial Gainful Activity</u>.  The Commissioner first considers whether the individual is presently engaged in substantial gainful activity.  If so, the individual will be found not disabled without consideration of her medical condition.  20 C.F.R. §§ 404.1520(a)(4)(I), (b); 416.920(a)(4)(I), (b).

<u>Step Two: Severe Impairment</u>.  If the individual is not engaged in substantial gainful activity, Plaintiff must then demonstrate that she suffers from a severe impairment or combination of impairments that significantly limits her ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

<u>Step Three: Listed Impairment</u>.  If Plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the individual has such an impairment, the Commissioner will find the individual disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

<u>Step Four: Residual Functional Capacity</u>.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite her impairment, the individual has the residual functional capacity ("RFC") to perform her past relevant work.  If she does have the RFC to perform past work, the individual will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).  RFC is defined as the most the individual can still do despite her limitations.  20 C.F.R. § 416.945.

<u>Step Five: Other Work</u>.  Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's RFC, age, education, and past work experience

to determine if she is able to make an adjustment to other work.  If she cannot do so, the individual will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), (g); 416.920(4)(a)(v), (g).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  Wallace v. Sec'y of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform work available in the national economy.  Id.  If there is a finding of disabled or not disabled at any step of the sequential analysis, the Commissioner will not proceed to the next step.  20 C.F.R. §§ 404.1520(a); 416.920(a).

## IV.  Analysis

At Step 1 of the sequential analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 16, 2001.  (Tr. 39.)  At Step 2, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spines, as well as depression, are severe impairments.  (Id.)  At Step 3, the ALJ found that, while these impairments are severe, they do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Id.)  At Step 4, the ALJ concluded that Plaintiff has retained the RFC to perform unskilled sedentary work involving no greater than simple repetitive tasks.  (Tr. 37, 39.)  Specifically, the ALJ concluded that Plaintiff is capable of lifting and carrying objects weighing up to 5 pounds frequently and 10 pounds occasionally.  (Tr. 37, 39.)  The ALJ also found that during the course of an 8-hour workday, Plaintiff is able to sit for 6 hours and stand or walk for a

total of 2 hours.  (Tr. 37, 39.)  At Step 5, the ALJ concluded that based on Plaintiff's RFC for sedentary work, and in consideration of Plaintiff's age, education, and work experience, the Medical-Vocational Rules ("the Grids")[3] direct a conclusion of "not disabled."  (Tr. 38, 39.)  With regard to Plaintiff's nonexertional limitations, the ALJ found that Plaintiff's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations.[4]  (Tr. 40.)

### A.  The Issue Presented and Standard

The issue before the Court is whether, at Step 5 of the sequential analysis, the ALJ properly relied on SSR 85-15 when he determined that there are other jobs in the national economy that Plaintiff can perform with her nonexertional impairment.  Plaintiff argues that the ALJ improperly relied on SSR 85-15 in assessing the effects of Plaintiff's nonexertional impairment on the occupational base because SSR 85-15 does not discuss "the hypothetical situation wherein mental impairments limit one to simple *repetitive* tasks."  (Brief in Support of Plaintiff ("Pl. Br.") at 14.)  Thus, Plaintiff maintains that the ALJ's decision is not supported by

---

[3]     Medical-Vocational Guidelines, referred to as "the Grids," dictate a result of "disabled" or "not disabled" according to a combination of vocational factors such as age, education level, work history, and residual functional capacity ("RFC").  The Grids establish, for exertional impairments only, the number of jobs existing in the national economy which people with those impairments can perform.  Sykes v. Apfel, 228 F.3d 259, 270 (3d Cir. 2000).  "The regulations do not purport to establish jobs that exist in the national economy at the various functional levels when a claimant has a nonexertional impairment . . . ."  Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000).  Id. at 269.

[4]     A limitation is exertional if it affects the claimant's ability to meet various on-the-job strength demands in terms of sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. § 404.1569a(b).  A limitation is nonexertional if it affects the claimant's ability to meet job demands other than those related to strength.  Id. § 404.1569a(c).  Examples of nonexertional limitations include difficulty functioning because one is nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; and difficulty in hearing or seeing.  Id.

substantial evidence and that the Court should either reverse and remand the case for further consideration or reverse and award benefits to Plaintiff.  (Pl. Br. at 13-14.)

The Third Circuit has held that, where the claimant has both exertional and nonexertional limitations:

> [I]n the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under [the Grids] without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion).

Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000).  The Sykes rule is not absolute, however, and in Allen v. Barnhart, the Third Circuit held that the Commissioner may rely on an SSR as a substitute for the testimony of a vocational expert under certain circumstances.  417 F.3d 396 (3d Cir. 2005); see also Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 94 (3d Cir. 2007) (citing and discussing the relationship between Sykes and Allen).  If an ALJ relies upon an SSR instead of consulting a vocational expert, "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base."  Allen, 417 F.3d at 407.  In other words, according to the Third Circuit, there must be a "fit" between the nonexertional impairment and the SSR relied upon by the ALJ.  See id. at 406.  Recent decisions have not altered this holding.  See Poulos, 474 F.3d at 94; Meyler v. Comm'r of Soc. Sec., 238 F. App'x 884, 890 (3d Cir. 2007).

In addition to Allen's "fit" requirement, the ALJ must also provide a claimant with notice that the ALJ intends to rely on an SSR at Step 5.  See Sykes, 228 F.3d at 261, 272-73; Allen, 417 F.3d at 407.  "[W]here the Commissioner has not previously advised or argued the

8

clear applicability of the [SSR] in advance of the hearing" the reviewing court should "give close scrutiny to the ALJ's reliance on [the SSR] satisfying the Commissioner's burden at Step 5 . . . ." Allen, 417 F.3d at 408.[5]  The Commissioner concedes that Plaintiff was not given prior notice of SSR 85-15's applicability.  (See Defendant's Brief ("Def. Br.") at 8.)  The Court is therefore obliged to "closely scrutinize" the ALJ's reliance on SSR 85-15 in this case.

*B. The ALJ's Opinion*

At the fourth step, the ALJ concluded that, given Plaintiff's exertional limitations, Plaintiff retains the RFC "to perform unskilled sedentary work involving no greater than simple, repetitive tasks."  (Tr. 37.)  Specifically, the ALJ found that Plaintiff is capable of lifting and carrying objects weighing up to 5 pounds frequently and 10 pounds occasionally.  (Id.)  The ALJ also found that during the course of an 8-hour workday, Plaintiff is able to sit for 6 hours and stand or walk for a total of 2 hours.  (Id.)

The ALJ also made a number of findings with regard to Plaintiff's nonexertional impairment – her depressive disorder.  The ALJ noted that every mental status examination in evidence showed that Plaintiff was alert and fully oriented, making and maintaining good eye contact.  (Tr. 36.)  No cognitive deficits were reported, and Plaintiff's speech was consistently

---

[5]  Defendant argues that Acquiescence Ruling 01-1(3) exempts ALJs from the notice requirement in cases where they intend to rely on an SSR at Step 5.  (See Def. Br. at 8.) The operative language of AR 01-1(3) notes that "[t]his Ruling [requiring notice] does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base."  AR 01-(3).

The Third Circuit has rejected this argument.  In Allen, the Third Circuit "question[ed] whether this exception [for SSRs in AR 01-1(3)] is called for and urge[d] that, as a matter of fairness, alerting a claimant to the relevant rule in advance will always be appropriate."  417 F.3d at 407.

described as goal-directed and coherent. (Id.) The ALJ noted that there was no mention of any mental disorder in Plaintiff's adult disability report, and Plaintiff did not pursue any formal psychiatric or psychological treatment. (Id.) The ALJ found that such indicators were inconsistent with contentions of persistent, major depression of any substantial magnitude. (Id.) The ALJ found that Plaintiff's condition has resulted in mild difficulty in sustaining concentration, persistence, and pace. (Tr. 36-37.) On the basis of these findings, the ALJ concluded that the evidence documented a depressive disorder with some signs of sleep and appetite disturbances. (Tr. 36.)

The next task for the ALJ was to consider the effect of Plaintiff's nonexertional impairment on Plaintiff's occupational base of "substantially all sedentary work." (Tr. 37, 38.) The ALJ relied on SSR 85-15 to accomplish this task, concluding "that [Plaintiff] is able to understand, remember and carry out instructions, interact appropriately with supervisors and co-workers and deal with stresses in the normal work setting." (Tr. 37.) The ALJ "noted that these abilities represent the basic mental demands of competitive remunerative unskilled work, as set forth in SSR 85-15." (Id.) While the ALJ did not directly quote language from SSR 85-15, he drew language from and clearly relied on the following passage:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability . . . .

1985 WL 56857, at *4.  The ALJ ultimately concluded, with no analysis of how Plaintiff's specific nonexertional limitations relate to the language cited from SSR 85-15, that Plaintiff's nonexertional impairment did not seriously compromise her RFC to perform sedentary work. (Tr. 40.)

### C.  "Fit" Analysis

After close scrutiny, the Court does not discern the requisite "fit" between Plaintiff's nonexertional impairment – her depressive disorder – and the ALJ's reliance on SSR 85-15.  The ALJ did not make the connection between the SSR and Plaintiff's nonexertional impairment "crystal-clear."  See Allen, 417 F.3d at 407.  Moreover, SSR 85-15 is expressly inapplicable to Plaintiff's combination of exertional and nonexertional impairments.

As another court faced with this issue concluded, "SSR 85-15 applies to claimants with no exertional impairments."  Williams v. Halter, 135 F. Supp. 2d 1225, 1239 (M.D. Fla. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995)).  This Court concludes that SSR 85-15 is inapplicable to cases – such as Plaintiff's – in which the claimant has both exertional and nonexertional impairments.  The Ruling's limited applicability is clear on its face. In relevant part, SSR 85-15 reads as follows:

> The tables rules reflect the potential occupational base of unskilled jobs for individuals who have severe impairments which limit their exertional capacities. . . .Where individuals also have nonexertional limitations of function or environmental restrictions, the table rules provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs within these exertional ranges that would be contraindicated by the additional limitations or restrictions. . . . <u>This [SSR] clarifies policies applicable in cases involving the evaluation of solely nonexertional impairments</u>.

Id. at *1-*2 (emphasis added).

11

The Code of Federal Regulations describes the proper procedure for assessing the status of a claimant, such as Plaintiff, with both exertional and nonexertional impairments. The regulations read in relevant part:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone, and if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2). The proper analysis for cases such as Plaintiff's is similarly described in SSR 83-14. That SSR instructs that:

> Where a person cannot be found disabled based on strength limitations alone, the rule(s) which corresponds to the person's vocational profile and maximum sustained exertional work capacity will be the starting point to evaluate what the person can still do functionally. The rules will also be used to determine how the totality of limitations or restrictions reduces the occupational base of administratively noticed unskilled sedentary, light, or medium jobs.

1983 WL 31254.

The Court is not holding that the record lacks "substantial evidence" to support the ALJ's ultimate conclusion. Rather, the Court is unable to review the record for "substantial evidence" because the ALJ incorrectly analyzed the relationship between Plaintiff's exertional and nonexertional limitations. The Code of Federal Regulations makes clear that on remand the ALJ should determine whether claimant's "work capability [of sedentary work involving no greater than simple, repetitive tasks] is further diminished in terms of any types of jobs that would be contraindicated by [her] nonexertional limitations." 20 C.F.R. Pt. 404, Subpt. P, App.

2 § 200.00(e)(2). This determination may not be made by relying on SSR 85-15. Rather, the ALJ must make this determination using the Grids as a framework, see id., and additional vocational resources in accord with Third Circuit case law, including Sykes and Allen.

## V. Conclusion

For the aforementioned reasons, and after careful review of the record in its entirety, the Court remands this case to the ALJ for a determination of how the "totality of limitations or restrictions reduces [Plaintiff's] occupational base of administratively noticed unskilled sedentary . . . jobs." SSR 83-14, 1983 WL 31254, at *3.

**ACCORDINGLY IT IS** on this 12th day of December, 2007,

**ORDERED** that the instant case is **REMANDED** for further review at Step Five in accordance with the accompanying Opinion; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg

**Hon. Faith S. Hochberg, U.S.D.J.**